UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JEFFREY WOLFE,
ADC #124018                                                                                      PLAINTIFF

V.                                              4:16CV00824 JTR

WILL CARTER, Transport Officer,
Yell County Sherriff's Office, et al.                                                DEFENDANTS

### **MEMORANDUM AND ORDER**[1]

## I. Introduction

Jeffery Wolfe ("Wolfe") is an insulin dependent diabetic. He has filed this *pro se* § 1983 action alleging that, on various occasions while he was confined in the Yell County Detention Center ("YCDC"), Jail Administrator Mike Leo May, Sergeant Mike Heath May, Sergeant Jacob Braden, Sergeant Jennifer Keener, Assistant Jail Administrator Carolyn Barefield, Transport Officer Jon Roy, and Transport Officer Will Carter violated his constitutional rights by failing to provide him with adequate medical care for diabetes. *Docs. 2, 14, & 16.* Wolfe brings this claim against Defendants in their individual capacities only, and he seeks $700,000 in damages.[2] *Id.*

---

[1] On November 16, 2017, the parties consented to proceed before a United States Magistrate Judge. *Doc. 82*.

[2] During screening mandated by 28 U.S.C. § 1915A, the Court: (1) dismissed, without prejudice, Wolfe's claims against all Defendants, in their official capacities; (2) dismissed, without

Defendants have filed a Motion for Summary Judgment on the merits of Wolfe's inadequate medical care claim, a Brief in Support, and a Statement of Undisputed Facts. *Docs. 61, 62, & 63.* Wolfe has filed a Declaration in Opposition to Defendants' Motion for Summary Judgment, a Brief in Support, and a Statement of Disputed Facts. *Docs. 70, 71, & 72.*

Wolfe has also filed a Motion for Partial Summary Judgment on the issue of liability, a Brief in Support, and a Statement of Undisputed Facts, and a Reply. *Doc. 66, 67, 68, & 84.* Defendants have filed a Response. *Doc. 73.*

Before addressing the merits of the pending Motions for Summary Judgment, the Court will summarize the relevant facts giving rise to Wolfe's inadequate medical care claim:[3]

1. On May 20, 2015, Wolfe was arrested and booked into the YCDC.

---

prejudice, Wolfe's claims against Defendants Gilkey, Gault, Elkins, and Moore; and (3) dismissed, with prejudice, Wolfe's claims against Defendant YCDC. *Doc. 22.* In their summary judgment papers, Defendants arguet that they are entitled to statutory immunity, under Ark. Code. Ann. § 21-9-301, from any state law negligence claim Wolfe may be pursuing against them. *Doc. 81.* However, Wolfe *admits* that he is *not* pursuing a state law negligence claim against any of the Defendants. *Doc. 84.*

[3] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

Wolfe brought his personal supply of insulin with him, which he was allowed to take until it ran out on May 22, 2015. On the same day, Defendants obtained more insulin, which Wolfe took until he was transferred to the Arkansas Department of Correction ("ADC") on May 28, 2015. *Doc. 16; Doc. 62 at Exs. 1, 9, & 10; Doc. 68; Doc. 72.*

      2.    On May 11, 2016, Wolfe was arrested and booked into the YCDC. Wolfe did not have any insulin supplies with him, and, over the next two days, no friends or family brought him any insulin supplies. On May 13, 2016, Wolfe filed a grievance seeking insulin. On the same day (May 13), a non-party physician examined Wolfe at the YCDC, gave him a prescription for insulin, and ordered that his blood sugar be checked once a day. Wolfe received insulin from May 14 until he was released from the YCDC on May 16, 2016. However, Defendants did not check Wolfe's blood sugar between May 14 and May 16. *Doc. 62 at Exs. 1, 2, 11 & 12; Doc. 68; Doc. 72.*

      3.    On September 27, 2016, Wolfe was arrested and booked into the YCDC. He did not have any insulin supplies with him, and no one brought him insulin supplies during the four days he remained in the YCDC. On September 30, 2016, Wolfe was transferred to the ADC. Wolfe did not receive any insulin during this three or four-day period he was in the YCDC. *Doc. 16; Doc. 62 at Exs. 1 & 3; Doc. 68; Doc. 72.*

4.  In October and November of 2016, Wolfe was transferred three times from the ADC to the YCDC to attend state court proceedings. On each occasion, Wolfe was in the Defendants' custody for approximately twenty-four hours.[4] Wolfe did *not* receive insulin during any of these brief periods of confinement at the YCDC. On November 3, 2016, Wolfe filed a grievance seeking insulin. However, Wolfe did not allege that he was enduring any adverse effects as a result of not receiving his medication. Wolfe returned to the ADC later that day. *Doc. 13; Doc. 60 at Exs. 4, 5, & 6; Doc. 68; Doc. 72.*

5.  On November 9, 2016, the ADC transported Wolfe to the YCDC, but failed to bring along his insulin supplies. From November 9 until sometime on November 12, Wolfe did not receive any insulin. On November 12, 2016, the YCDC began supplying Wolfe with insulin, and allowing his glucose level to be checked. Between November 12 and January 20, 2017, it is undisputed that Defendants regularly gave Wolfe insulin and checked his blood sugar. During that time, Wolfe's blood sugar readings typically were between 90 and 230, levels that indicated his diabetes was being reasonably well managed.[5] *Doc. 62, Ex. 13; Doc.*

---

[4] Specifically, Wolfe was held at the YCDC on: (1) October 5 to 6, 2016, for approximately twenty-three hours; (2) October 12 to 13, 2016, for approximately twenty-four hours; and (3) November 2 to 3, 2016, for approximately twenty-two hours. *Doc. 62 at Exs. 4, 5, & 6.*

[5] According to the American Diabetes Association, a dangerously low blood sugar reading is below 70 mg/dl. A dangerously high blood sugar reading is greater than 300 mg/dl, or consistent readings of greater than 250mg/dl that do not decrease after receiving more insulin. *See*

*68, Doc. 72.*

6.      Every time Wolfe was held at the YCDC, he received a standard meal tray containing a variety of proteins, carbohydrates, fruits, and vegetables. The morning and afternoon meals were served with milk, while the evening meals were served with sweetened Cool-Aid or tea.  Wolfe claims that he filed one grievance, which he has not provided the Court, seeking a diabetic diet.  He also claims he verbally requested a diabetic diet from Defendants on numerous occasions.  It is undisputed that Wolfe never received a diabetic diet while in Defendants' custody. *Doc. 62 at Ex. 15; Doc. 68, Doc. 72.*

## II.  Discussion

Defendants argue that they are entitled to summary judgment, as a matter of law, on the inadequate medical care claim Wolfe has asserted against them.  The Court agrees.

To proceed to trial on his inadequate medical care claim, Wolfe must have evidence demonstrating that: (1) he had an objectively serious medical need for treatment of his diabetes; and (2) Defendants subjectively knew of, but were deliberately indifferent to, that serious medical need.  *See Saylor v. Nebraska*, 812

---

*American Diabetes Association*, http://www.diabetes.org/living-with-diabetes/treatment-and-care/blood-glucose-control. On December 25, 2016, which was Christmas day, Wolfe had a blood sugar reading of 247 mg/dl. After receiving a second dose of insulin, Wolfe's blood sugar came down to 150 mg/dl.  *Doc. 62, Ex. 13 at 15.*

F.3d 637, 644 (8th Cir. 2016); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010).

The parties *agree* that Wolfe's diabetes was an objectively serious medical need. *Docs. 62, 68, & 72.* The only remaining question is whether Wolfe has produced evidence demonstrating that Defendants were *deliberately indifferent* to that serious medical need. Deliberate indifference, which goes well beyond negligence or gross negligence, "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

Wolfe alleges that Defendants, each of whom allegedly knew that he was an insulin dependent diabetic, were deliberately indifferent to his serious medical needs by delaying his receipt of insulin for various intervals ranging from less than twenty-four hours to up to three or four days while he was in the YCDC, and failing to provide him with a diabetic diet. *Docs. 68 & 72.*

In a sworn affidavit, Defendant Assistant Jail Administrator Barefield explains that, whenever Wolfe arrived at the YCDC without his medication, jail officials promptly began the process of obtaining insulin for him. *Doc. 62, Ex. 10.* Barefield further explains that the "process of obtaining and filling Mr. Wolfe's prescriptions and getting his prescriptions to the Detention Center takes time" depending "upon the time of day, [and the] availability of physicians, pharmacists,

and Detention Center staff." *Id.* at 3; *see also Fourte v. Faulkner Cnty.,* 746 F.3d 384, 390 (8th Cir. 2014) (finding that no deliberate indifference when medical providers "made efforts to cure the problem in a reasonable and sensible manner").

Construing the facts in the light most favorable to Wolfe, he went without insulin while in Defendants' custody for two intervals of three or four days (September 27 to 30, 2016, and November 9 to 12, 2016). *Doc. 62, Ex. 3; Doc. 68.* He also went without insulin for about two days, between May 11 and May 13, and several other short intervals of less than twenty-four hours. Importantly, during all of those intervals that Wolfe was without insulin, Defendants or other YCDC employees took the steps necessary to: (1) schedule appointments with doctors to see Wolfe; (2) have the doctors, after seeing Wolfe, issue the prescriptions required to get the insulin; and (3) pick up the insulin and related supplies and deliver them to the YCDC. Given the busy schedule of doctors, it sometimes took Defendants several days to complete that process.[6]

Wolfe expresses his *unsubstantiated personal opinion* that Defendants made him wait too long for his insulin supplies. However, the real issue is whether Defendants (who acted promptly in initiating the medical process necessary for

---

[6] As an insulin dependent diabetic, Wolfe has not addressed why he failed to bring his insulin supplies with him to the YCDC (as he did in May of 2015) or have someone else bring him those supplies. This option would have substantially reduced the time required to get those medical supplies to Wolfe.

Wolfe to get his insulin and other supplies) were *deliberately indifferent* to his serious medical need for insulin. *See Reid v. Griffin*, 808 F.3d 1191, 1193 (8th Cir. 2015) (explaining that an "inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment"); *Meuir v. Greene Cnty. Jail Emply.,* 487 F.3d 1115, 1118 (2007) (explaining that a prisoner's mere disagreement with the course of medical care is insufficient to sustain a claim of deliberate indifference).

The affidavit of Barefield, which is uncontroverted, makes it clear that, each time Wolfe was booked into the YCDC, jail personnel promptly initiated the process of obtaining insulin for him, which on two occasions took three or four days. As previously explained, this required jail officials to schedule a doctor's appointment for Wolfe, have the doctor issue a prescription, have the prescription filled, and then have the insulin supplies delivered to the jail. Because the issue of *when* a doctor could see Wolfe was outside Defendants' control, it is not unreasonable that this process, on two occasions, took several days to complete. There are simply no facts in the record that suggest any of the Defendants were engaged in any "deliberate inaction" or acting with "reckless disregard" for Wolfe's medical needs in obtaining his insulin and related supplies.

Finally, mere negligence or even gross negligence is not enough to sustain a constitutional violation.  *See Moore,* 255 F.3d at 545.   Instead, to defeat summary

judgment, Wolfe must have *evidence* that Defendants acted "callously" and with "reckless disregard." *Meuir*, 487 F.3d at 1118 (explaining that a prisoner "must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded" his need for medical care). Wolfe has *not* presented *any such evidence*.

Instead, Wolfe argues that Defendants violated YCDC policy by failing to obtain insulin "immediately" upon his arrival at their facility. That argument is contrary to the uncontroverted facts, *i.e.,* the YCDC policy only specifies that, if an intake officer becomes aware of "mental health" problems, he must notify the medical staff "as soon as possible."[7] Furthermore, based on Barefield's affidavit, jail personnel promptly initiated the actions required to get Wolfe his insulin each time he was booked in to the YCDC. Finally, Wolfe's argument is legally flawed because the violation of an internal jail policy, standing alone, does not rise to the level of a constitutional violation. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir.

---

[7] Specifically, Wolfe points to § B-10(III)(M)(6) of the YCDC Policy Manual, which states that, after a newly arriving detainee completes a health questionnaire, the:

> intake officer will be particularly aware of *mental health* questions. When one or more of these questions is answered "yes," the intake deputy will notify the medical staff *as soon as possible*.

*Doc. 53, Ex. 21 at 60* (emphasis added). Wolfe believes that, pursuant to this language, Defendants were required to immediately notify the YCDC medical staff whenever he arrived at intake without insulin. However, the plain language of that policy provision clearly states that intake deputies must be "particularly aware of *mental health* questions," and must notify medical staff as soon as possible "when one or more of *these questions* is answered 'yes.'" *Id. (*emphasis added). Furthermore, as previously explained, there is *no evidence* that Defendants failed to immediately notify the medical staff to begin the process of obtaining insulin for Wolfe.

2003); *Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir. 1997).

As to Wolfe's allegations regarding the lack of a diabetic diet, it is undisputed that the standard meal provided to Wolfe contained servings of protein, vegetables, fruits, and carbohydrates.[8] Wolfe was free to pick which of these items to eat. It is also undisputed that Wolfe was able to supplement his diet, when his blood sugar readings ran high or low, with a variety of food and drinks he purchased from the commissary. *Docs. 62 at Ex. 16.* Most importantly, Wolfe's blood sugar readings demonstrate that he was able to reasonably control his diabetes, without receiving a special meal tray.

Finally, to avoid summary judgment, Wolfe "must place verifying medical evidence in the record to establish the *detrimental effect*" of the delay in receiving insulin or a special diet. *See Jackson v. Riebold*, 815 F.3d 1114, 1119-20 (8th Cir. 2016) (emphasis added); *Gibson v. Weber*, 433 F.3d 642, 646-47 (8th Cir. 2006) (same). Wolfe alleges that he suffered "excessive urination, constant thirst and hunger, weakness, confusion, dizziness, mental distress, and seizures." *Doc. 70 at 9.* However, Wolfe has *not* produced any medical request forms or grievances notifying

---

[8] Wolfe complains that he received sweetened tea and Cool-Aid with his evening meals. However, it is u*ndisputed* that Wolfe received milk during his morning and noon meals. Further, Wolfe does *not* allege that he was denied access to drinking water.

Defendants that he as experiencing these symptoms.[9] Similarly, Wolfe has not produced any freeworld or ADC medical records demonstrating that he sought or received treatment for any adverse effects of not receiving insulin or a diabetic diet during his brief periods of confinement at the YCDC. *See Cody v. CBM Corr. Food Servs.,* No. 06-1474, 2007 WL 2325211 (8th Cir. Aug. 15, 2007) (affirming summary judgment when there was no evidence that a prisoner's "health suffered as a result" of the defendants' failure to provide him with a "special diet" for his diabetes, hypertension, and high cholesterol); *Ervin v. Busby*, 992 F.2d 147, 150-51 (8th Cir. 1993) (affirming summary judgment when there was no evidence that a pretrial detainee was harmed by a one month delay in receiving his prescription medication).

For these reasons, the Court concludes that Defendants are entitled to summary judgment on Wolfe's inadequate medical care claim.[10]

---

[9] Wolfe has produced five sworn statements from YCDC detainees who claim they heard Wolfe request *unspecified* "medical attention for his diabetes." *Doc. 5* (emphasis added). However, *none* of the witnesses declare that Wolfe told any of the Defendants he was suffering from excessive urination, constant thirst and hunger, weakness, confusion, dizziness, mental distress, seizures, or any other serious medical complication as a result of not receiving his insulin or special diet.

[10] Defendants have also raised the affirmative defense of qualified immunity. However, because the Court concludes that Defendants are entitled to summary judgment on the merits of Wolfe's inadequate medical care claim, there is no need to address qualified immunity as an alternative reason for granting them summary judgment. *Schmidt v. City of Bella Villa,* 557 F.3d 564, 574 (8th Cir. 2009) ("Since we find no constitutional violation, we need not address the issue of qualified immunity"); *Ambrose v. Young*, 474 F.3d 1070, 1077 n.3 (8th Cir. 2007) ("[I]f the court finds no constitutional violation occurred, the analysis ends and the issue of qualified immunity is not addressed").

### III. Conclusion

IT IS THEREFORE ORDERED THAT:

1. Defendants' Motion for Summary Judgment *(Doc. 61)* is GRANTED.

2. Wolfe's inadequate medical care claim against Administrator May, Sergeant May, Braden, Keener, Barefield, Roy, and Carter, in their individual capacities, is DISMISSED, WITH PREJUDICE.

3. Wolfe's Motion for Partial Summary Judgment *(Doc. 66)* is DENIED.

Dated this 6th day of March, 2018.

_____
UNITED STATES MAGISTRATE JUDGE